NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**RAMANATHAN PADMANABHAN, KRITHIKA SRINIVAS, AS LEGAL REPRESENTATIVES OF A MINOR CHILD, I.R.I.,**
*Petitioners-Appellants*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee*

_____

2016-1074

_____

Appeal from the United States Court of Federal Claims in No. 1:11-vv-00141-MCW, Judge Mary Ellen Coster Williams.

_____

Decided: February 8, 2016

_____

RAMANATHAN PADMANABHAN, KRITHIKA SRINIVAS, San Ramon, CA, pro se.

HEATHER LYNN PEARLMAN, Vaccine/Torts Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. Also repre-

sented by Benjamin C. Mizer, Rupa Bhattacharyya, Vincent J. Matanoski, Voris E. Johnson, Jr.

───────────────

Before Wallach, Clevenger, and Taranto, *Circuit Judges.*

Per Curiam.

Appellants Krithika Srinivas and Ramanathan Padmanabhan, on behalf of their minor son I.R.I., appeal the decision of the United States Court of Federal Claims ("Claims Court") that upheld the dismissal of their petition for compensation under the National Childhood Vaccine Injury Act of 1986 ("Vaccine Act"), 42 U.S.C. §§ 300aa-1–300aa-34 (2012). *See Padmanabhan v. Sec'y of Health & Human Servs.*, No. 11-141V (Fed. Cl. Aug. 6, 2015) (upholding Chief Special Master's dismissal) (J.A. 11–16); *Padmanabhan v. Sec'y of Health & Human Servs.*, No. 11-141V, 2015 WL 1736345 (Fed. Cl. Mar. 26, 2015) (Chief Special Master's dismissal) (J.A. 17–56). Because the Claims Court correctly concluded that Chief Special Master Denise Vowell's dismissal for failure to prosecute was not an abuse of discretion, we affirm.

## Background

I.R.I. was born to the Appellants in November 2006. *Padmanabhan*, 2015 WL 1736345 at *9. "During his first two years, I.R.I. received the recommended childhood vaccines . . . . No reactions to any of the vaccinations were reported in the medical records." *Id.* at *10 (footnote omitted). During I.R.I.'s two-year wellness visit on December 2, 2008, the pediatrician "assessed him as a well child, but this assessment was followed by a note reflecting 'slower' social communication development." *Id.* at *11. "This consultation note appears to reflect the first report of concerns about I.R.I.'s speech development and behavior." *Id.*

On January 20, 2009, Appellants first expressed a concern to I.R.I.'s pediatrician about his development. Appellants "were concerned primarily with his lack of social development." *Id.* at *12. The same year, I.R.I. was tested and found to be "in the mildly autistic range" of the Childhood Autism Rating Scale. *Id.* at *13. On October 19, 2010, a metabolic specialist evaluated I.R.I., but concluded "he did not have enough information to exclude a mitochondrial disorder and suggested an [electroencephalogram ("EEG")], skin and muscle biopsies, a lumbar puncture, a brain [magnetic resonance imaging ("MRI")], and blood, urine, and plasma tests." *Id.* at *21 (citation omitted). In January 2011, I.R.I. was tested for a short-chain acyl-CoA dehydrogenase ("SCAD") deficiency. *Id.* The results "stopped short of diagnosing I.R.I with SCAD and recommended parental [deoxyribonucleic acid ("DNA")] studies to determine if all the DNA changes were on the same chromosome." *Id.* (citation omitted).

In March 2011, Appellants filed a petition on behalf of I.R.I. for compensation under the Vaccine Act. *See generally* J.A. 116–23. Appellants asserted a number of vaccines[1] that I.R.I. received on or about March 13, 2008, "aggravated a preexisting Mitochondrial disease resulting in immune deficiency that resulted in but not limited to encephalopathy, nutritional disorders, metabolic disorders, immune dysfunction, oxidative [s]tress, inflammation, [and] inflammation of the [b]rain that damaged and continues to damage his physical, mental and emotional development." J.A. 117.

---

[1]    These vaccines included measles, mumps, and rubella ("MMR"); diphtheria, tetanus, and acellular pertussis ("DTaP"); Haemophilus influenzae type b ("Hib"); and varicella vaccines. *See Padmanabhan*, 2015 WL 1736345 at *1.

Appellants continued to seek medical evaluation and treatment for I.R.I. after they filed their petition. On July 27, 2011, I.R.I. underwent an EEG that showed abnormal results, indicating "a mild, diffuse, encephalopathy." *Padmanabhan*, 2015 WL 1736345 at \*22 (internal quotation marks and citation omitted). On October 28, 2011, a "brain pattern test (a qualitative EEG)" was performed but "was not interpreted by any physician." *Id.* (citation omitted).

In March 2015, the Chief Special Master dismissed Appellants' claim for "failure to prosecute." *Id.* at \*8 (citing Rules of the Court of Federal Claims ("Claims Court Rules") App. B (Vaccine Rules of the United States Court of Federal Claims) 21(b)(1)). The Chief Special Master alternatively denied the Appellants' petition for compensation based on the record evidence submitted by the Appellants. *Id.* at \*30. The Chief Special Master determined the Appellants did not establish "preponderant evidence of a Table[2] encephalopathy. [Appellants] have also not demonstrated by preponderant evidence that vaccines caused or significantly aggravated their son's condition." *Id.*

---

2    The Vaccine Act allows petitioners to recover compensation by either proving an injury listed on the Vaccine Injury Table (i.e., a "Table" injury) or by proving causation-in-fact. *See* 42 U.S.C. §§ 300aa-11(c)(1)(C)–13(a)(1). A Table injury may be demonstrated by showing "that the person who suffered injury or who died . . . sustained, or had significantly aggravated, any illness, disability, injury, or condition set forth in the Vaccine Injury Table in association with the vaccine referred to . . . or died from the administration of such vaccine," within the proscribed time period. *Id.* § 300aa-11(c)(1)(C)(i)–(ii); *see id.* § 300aa-14 (Vaccine Injury Table).

In April 2015, Appellants filed a Motion for Review of the Chief Special Master's decision with the Claims Court. In its August 6, 2015 decision, the Claims Court determined Appellants failed to demonstrate the "Chief Special Master's dismissal of their petition for failure to prosecute was an abuse of discretion" and thus denied the Appellants' motion for review of the Special Master's decision. J.A. 16. Appellants timely appealed the Claims Court's decision. This court possesses jurisdiction to review this appeal pursuant to 28 U.S.C. § 1295(a)(3) (2012).

## DISCUSSION

### I. Standard of Review

"In reviewing a ruling by the Court of Federal Claims that a special master's findings of fact were not arbitrary and capricious, this court exercises *de novo* review." *Lampe v. Sec'y of Health & Human Servs.*, 219 F.3d 1357, 1360 (Fed. Cir. 2000) (citations omitted). "In effect, this court performs the same task as the Court of Federal Claims and determines anew whether the special master's findings were arbitrary or capricious." *Id.*

We review dismissals for failure to prosecute claims under an abuse of discretion standard. *See Claude E. Atkins Enters., Inc. v. United States*, 899 F.2d 1180, 1183 (Fed. Cir. 1990) (In reviewing "a decision of the Claims Court to dismiss 'pursuant to Rule 41(b) [of the Rules of the Court of Federal Claims], our inquiry is whether the court abused its discretion.'"); *see also* Fed. Cl. App. B, R. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, the court may dismiss on its own motion or the defendant may move to dismiss the action or any claim against it."); Fed. Cl. App. B, R. 21(b)(1) ("The special master or the court may dismiss a petition or any claim therein for failure of the petitioner to prosecute or comply with these rules or any order of the special master or the court.").

"An abuse of discretion exists when, *inter alia,* the lower court's decision was based on an erroneous conclusion of law or on a clearly erroneous finding of fact." *Matos ex rel. Rivera v. Sec'y of the Dep't of Health & Human Servs.,* 35 F.3d 1549, 1552 (Fed. Cir. 1994) (internal quotation marks and citation omitted). "The decision below will not be disturbed unless upon a weighing of relevant factors we are left with a definite and firm conviction that the court below committed a clear error of judgment." *Adkins v. United States*, 816 F.2d 1580, 1582 (Fed. Cir. 1987) (internal quotation marks and citations omitted).

## II. The Chief Special Master Did Not Abuse Her Discretion in Dismissing Appellants' Petition for Failure to Prosecute

The Chief Special Master dismissed Appellants' claim for failure to prosecute. *Padmanabhan*, 2015 WL 1736345 at *8. In reaching this determination, the Chief Special Master indicated Appellants filed some medical records in March 2011 and some additional records in June 2011, December 2011, and August 2013; however, "the medical records remain incomplete." *Id.* at *2. "In the four years since filing this petition on their son's behalf, [Appellants] have refused to comply with numerous orders. They have refused to follow the Vaccine Rules regarding the filing of motions." *Id.* Appellants "repeatedly asserted that the incomplete medical records and other documents filed, which d[id] not include any expert's or treating physician's opinion regarding vaccine causation of I.R.I.'s condition, demonstrate entitlement to compensation." *Id.* (citations omitted). "I.R.I.'s case has essentially been at an impasse since December 2012." *Id.*

Appellants present numerous arguments that allege procedural errors during the pendency of their case before the Claims Court. Appellants contend the Chief "Special [M]aster and [the Claims Court] are relying on false and

incomplete information from the record to arrive at their conclusion[s]." Appellants' Br. 26; *see id.* at 13–16 (discussing factual errors and omissions by the Claims Court); *id.* at 20–24 (discussing alleged errors and impropriety of the Chief Special Master and opposing counsel). Appellants further contend the Chief Special Master and the Appellee, the Secretary of Health and Human Services, were "adversarial, and at times insulting." *Id.* at 19. Appellants make assertions of "falsifying record[s] to create prejudice against [Appellants]," *id.* at 21, and that the "[Chief] Special Master altered [the] record at the time of dismissing the case," *id.* at 24.

As an initial matter, we find Appellants' allegations of impropriety and misconduct unfounded. Appellants have not provided any evidence to substantiate their claims of misconduct. *See generally id.* at 9–28; *see also* J.A. 93–94 (Appellants were provided with the opportunity to submit evidence in camera to the Chief Special Master regarding alleged intimidation of physicians treating I.R.I.; however, no evidence was submitted to the court.).

In any event, we agree with the Claims Court's determination that the Chief Special Master did not abuse her discretion in dismissing I.R.I.'s proceeding for failure to prosecute. The record demonstrates the Chief Special Master afforded the Appellants considerable leeway to pursue their claims. She granted the Appellants a suspension of proceedings for a combined total of 180 days, which is the maximum amount of time permitted for suspension of proceedings. *See Padmanabhan*, 2015 WL 1736345 at *6–8; *see also* Fed. Cl. App. B, R. 9(b) (allowing for an initial 30-day suspension of proceedings and up to an additional 150 days if deemed appropriate).

The Chief Special Master issued numerous orders requiring the Appellants to file complete medical records with the court. *See, e.g.,* J.A. 4–8 (docket entries 18, 32–33, 36, 38, 42–43). Additionally, repeated warnings were

issued to the Appellants that their case would be dismissed if they did not comply with these orders. *See Padmanabhan*, 2015 WL 1736345 at \*3–6. "Over the four years their petition has been pending, the Chief Special Master ordered [Appellants] to file additional medical records a total of 10 times, in orders spanning December 18, 2012, until March 28, 2014." J.A. 13 (citing *Padmanabhan*, 2015 WL 1736345 at \*3–6). In May 2013, the Chief Special Master issued an Order to Show Cause, which required the Appellants to "file additional medical records or otherwise show cause for why this case should not be dismissed for failure to prosecute." J.A. 101 (emphasis omitted).

Despite the Appellants' repeated non-compliance with these orders, on November 15, 2013, the Chief Special Master issued another Order to Show Cause stating that "[a]lthough [she] could dismiss this case now for [Appellants'] failure to prosecute, [she] will afford [Appellants] one last chance to comply with [her] orders and establish they are entitled to compensation because the interests of a minor child are involved." J.A. 98 (emphasis omitted). In this order, the Chief Special Master explained the Appellants had the burden of proving entitlement to compensation, which "must be supported by either medical records or by the opinion of a competent physician." J.A. 99 (citation omitted). Appellants were ordered to "file any additional documentation they believe w[ould] establish their entitlement to compensation, or otherwise show cause why this case should not be dismissed for their failure to prosecute and failure to establish vaccine causation, by no later than . . . January 17, 2014." J.A. 100 (emphasis omitted). Appellants did not comply with this Order.

On March 28, 2014, the Chief Special Master made "one final attempt to explain to [Appellants] the devastating effect that their refusal to comply with court orders [was] about to have on their son's vaccine injury claim."

*Padmanabhan*, 2015 WL 1736345 at *5 (internal quotation marks and citation omitted). This order also noted that the Appellants could request that the Chief Special Master "rule on the record as it now stands or . . . move for summary judgment." J.A. 64 (footnotes omitted). She "urg[ed] [Appellants] to seek out an attorney" before doing so. J.A. 64. She also provided Appellants with "a list of attorneys who [had] recently indicated that they are willing to review cases filed by pro se petitioners." J.A. 64 (footnote omitted). Appellants were required to file by May 27, 2014, "updated medical records covering all doctor appointments and lab/genetic testing performed since October 2011." J.A. 64 (emphasis omitted). Appellants failed to file any medical records in response to this order. *Padmanabhan*, 2015 WL 1736345 at *6; *see generally* J.A. 2–3 (docket entries).

Despite the Appellants' repeated failure to comply with the Chief Special Master's orders, "prior to taking any further action, [she] afforded them the opportunity to point out in a telephonic conference any matters in the record that support[ed] their claim of vaccine causation of I.R.I.'s condition." *Padmanabhan*, 2015 WL 1736345 at *6.

Based on the Chief Special Master's actions throughout this proceeding, we are *not* "left with a definite and firm conviction that the court below committed a clear error of judgment." *Adkins*, 816 F.2d at 1582 (internal quotation marks and citations omitted). Indeed, we are left with a firm conviction that the Chief Special Master went out of her way to accommodate the needs of pro se litigants. Accordingly, we find there was no abuse of discretion in dismissing the Appellants' petition for failure to prosecute.

CONCLUSION

We have considered Appellants' remaining arguments and find them unpersuasive. Accordingly, the decision of the United States Court of Federal Claims is

**AFFIRMED**

COSTS

Each party shall bear its own costs.